Mona Alpha ADKINS, Executrix of the Estate of Raymond L. ADKINS, Deceased *v.* Elizabeth HUGHES and Ruby HILL

82-107 642 S.W.2d 94

Supreme Court of Arkansas
Opinion delivered November 15, 1982

*Alonzo D. Camp,* for appellant.

*Homer Tanner,* for appellees.

STEELE HAYS, Justice. This is an inner-family dispute. Mona Adkins, appellant, is the widow of Raymond Adkins and a sister-in-law of Elizabeth Hughes, Ruby Hill and Betty Hughes, deceased. Mona brought this suit against Elizabeth and Ruby, claiming an inter vivos gift to Raymond of a $10,000 Certificate of Deposit. The Chancellor found there was no gift and the issue on appeal is whether the evidence established a gift. We affirm the Chancellor.

Prior to her death in January 1981, Betty had been physically incapacitated for a number of years and her business affairs were being handled by her sister, Elizabeth. In 1979, Betty obtained a $30,000 C.D., naming her sisters, her brother and herself as co-owners. At a family gathering in January, 1980, a dispute arose concerning the certificate. Elizabeth then went to the bank and had the $30,000 C.D. converted into three C.D.'s of $10,000 each, listing the same four names on each certificate. She returned to the house and in Betty's presence gave one C.D. to Ruby, one to Raymond, and kept one for herself. Raymond died a year later, several weeks before Betty.

There were irregularities in the procedures setting up the original $30,000 C.D. and in the subsequently converted C.D.'s of $10,000 each. The trial court held that a joint tenancy had not been established on either occasion and that the money had remained Betty's at all times. We agree with the result reached by the trial court. It appears that the most we can say about the $10,000 C.D. that was handed to Raymond is that it was a C.D. for $10,000 in Betty's name. It is not necessary to discuss the trial court's finding on the joint tenancy as that issue is not contested by the appellant, nor do we need to determine the status of the C.D. delivered to Raymond, as we agree in any case, that the trial court was correct in its finding that there was insufficient evidence to establish an inter vivos gift.

We stated the rule for establishing a gift in *Boling, Special Administrator* v. *Gibson*, 266 Ark. 310, 584 S.W.2d 14 (1979).

[The appellants have] the burden of showing, by clear

and convincing evidence, that these certificates were delivered to them by [the donor] with the clear intent to make an immediate, present, final gift beyond recall, releasing all future dominion and control. It must have been the intention of the donor that title pass immediately. . . .

The only evidence on behalf of Mona that might indicate a gift was her own testimony pertaining to Betty's intent at the family gathering:

Betty told Elizabeth to go to the bank . . . and Elizabeth had one certificate, to take care of it, and to make three of them, one for Ruby and one for Raymond. . . .

There was no other evidence introduced that would imply that an effective gift had been made. Even Mona's testimony on the issue of intent fails to rise to the level of a present and immediate gift. The remainder of the argument is based on speculation.

Elizabeth testified that Betty had suffered a stroke and had had light strokes from time to time, was not able to write her name and had difficulty in her speech. Betty's nurse also testified as to her poor physical condition. The trial court in its findings stated it did not find Betty was fully competent to transact business at all times mentioned, and her competency was not proved by any testimony.

Betty was present at the gathering but except for Mona's testimony she was a passive participant in the proceeding and made no significant comment. The nurse said Betty did not even look at the C.D.'s when Elizabeth returned from the bank. Mona's claim that Betty instructed Elizabeth to cash in the C.D. and divide the proceeds equally among the three for gift purposes is unsupported. Elizabeth's explanation was that dividing up the C.D.'s was for safekeeping, and to prevent family squabbling. She said the $30,000 constituted most of Betty's assets and this testimony was not challenged.

In studying the abstracted testimony, we find nothing relative to either the original C.D. or the converted C.D.'s

that indicates Betty ever intended to make a present, immediate or final gift or to give up all dominion and control of what was apparently all her cash assets. Her passive role in the transaction can only provide us with matters of speculation and does not give clear and convincing evidence that a gift was intended:

> ... a delivery for safekeeping or for any purpose, either express or implied, other than a specific intent to part with all right, title and interest in, and all dominion and control over the certificates would not constitute a gift. *Boling, supra,* at 17.

Affirmed.